KAUFMAN GRAIN COMPANY, INC., Plaintiff-Appellant, v. THE DIRECTOR OF THE DEPARTMENT OF AGRICULTURE *et al.*, Defendants-Appellees.

Fourth District   No. 4—88—0249

Opinion filed December 28, 1988.—Modified on denial of rehearing March 28, 1989.

Gary L. Smith, P.C., of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellee Department of Agriculture.

Michael G. Barton, of Bellatti & Barton, of Springfield, for appellee Capital Agricultural Property Services, Inc.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff in administrative review, Kaufman Grain Company, Inc. (Kaufman Grain), appeals a decision of the Illinois Department of Agriculture (Department) which ordered Kaufman Grain to reduce its

damage discount assessment for grain delivered to it on behalf of Kostbade Farms. We reverse the circuit court's decision which affirmed the decision of the Department.

This litigation arose out of a dispute between Capital Agricultural Property Services, Inc. (CAPS), and Kaufman Grain concerning the quality of the landlord's share of the 1985 corn crop grown on the Kostbade Farms near Crown Point, Indiana. CAPS manages Kostbade Farms for its owner, and the landlord's share of the 1985 corn crop was delivered to Kaufman Grain on instructions of CAPS.

Following the delivery of the landlord's share of the 1985 Kostbade Farms corn crop, Kaufman Grain changed its assessment of the amount thereof which was damaged and eventually assessed a damage discount of $12,246.60 with respect to the corn. On April 22, 1987, CAPS wrote the Department, complaining of the amount of this damage discount assessment. On May 6, 1987, the Department forwarded a copy of CAPS' complaint to Kaufman Grain and invited it to submit a response thereto. On May 8, 1987, Kaufman Grain submitted to the Department a written response to CAPS' complaint. In a letter dated May 14, 1987, the Department informed Kaufman Grain in view of its response to CAPS' complaint, it appeared the matter would not be settled without a hearing. Therefore, "pursuant to Section 6 of The Illinois Grain Dealers Act (Ill. Rev. Stat., Chapter 111, Paragraph 301 et. seq.), Section 18a of The Public Grain Warehouse & Warehouse Receipts Act (Ill. Rev. Stat., Chapter 114, Paragraph 214.1 et. seq.), and the Administrative Procedures [sic] Act of Illinois (Ill. Rev. Stat., Chapter 127, Paragraph 1001, et seq.)," a hearing was scheduled on CAPS' complaint.

The first session of the hearing on CAPS' complaint was held on May 29, 1987. At that hearing, Kaufman Grain filed a written motion to dismiss the proceedings. The motion alleged (1) the Department had no subject matter jurisdiction over the dispute between Kaufman Grain and CAPS; (2) the May 14, 1987, notice of hearing cited no statute or rule which allows the Department to settle disputes between a grain producer and a grain dealer or a grain warehouse; and (3) the proceeding deprived Kaufman Grain of its right to a jury trial. In arguing against this motion, the Department's counsel, John L. Narmont, stated:

"[T]he Department would have jurisdiction, I think, on two grounds to have the hearing. First one to determine in the course of this hearing that there is some regulatory or bookkeeping violation or licensing issue that might arise, but since—but that may well result in a subsequent hearing, so the De-

partment would be interested and, secondly, the Department is in a position to determine whether there has been a failure to pay for grain which has been sold to the facility."

In response to a statement by Kaufman Grain's counsel that it had received no notice of a bookkeeping or operations violation, Mr. Narmont stated:

"I believe that we cited in the notice [of hearing] Section 6. Section 6 empowers the Department to—may upon its own motion and shall upon the verified complaint in writing of any person set forth facts, investigate. *** I wanted to make clear from the beginning, from the standpoint of the Department, we view this more as an investigatory function here to determine if there's any violation under the statute or regulation which would give rise to a license revocation hearing and don't consider that this particular case as is set forth, that at this time, that's the posture of the case."

In denying Kaufman Grain's motion to dismiss, the hearing officer stated:

"I think Section 6 of the Grain Dealers Act does give statutory authority to proceed on this matter. I think—I do agree with Mr. Narmont in the fact that the results of this hearing cannot be grounds for suspension or revocation of a license of Kaufman Grain Company. It would have to be a separate matter considered under a separate notice of hearing at a later date. The Department does have a lengthy precedent in holding hearings of this type to adjudicate claims filed by producers against licensees. These claims, if unresolved, would result probably in a claim that would have to be adjudicated in a formal manner, which [sic] as an insolvency proceeding, so I don't see why we can't proceed here today so the motion is formally denied."

When asked by Kaufman Grain's counsel what relief the Department could grant, the hearing officer stated:

"In past cases, I'll either decide that the dealer licensee is ordered to pay certain damages to the producer or reduce the amount of the claim to a certain point and order him to pay that or deny the claim in its entirety and dismiss the matter."

In again addressing Kaufman Grain's motion to dismiss at the conclusion of the first session of the hearing, the hearing officer stated:

"The bottom line as far as the Department's responsibilities are to guarantee that producers of grain are compensated for grain in a fair and equitable manner. I think this particular

complaint or claim we have before us today alleges that there are monies due to the claimant from the Respondent here, which is Kaufman Grain Company, Inc. The Department has a statutory power and responsibility to make sure that producers of grain who are dealing with licensed grain elevators are treated in a fair manner. *** I think the Department's position in this matter has been until this claim is proven to be valid, the Department has no position on it. If this claim were to be proven valid, then the Department has the responsibility to make sure the licensee, Kaufman Grain Company, Inc., would honor this commitment and make a monetary settlement with the claimant ***. *** [I]f it is valid, and if it is, I think I am empowered by Section 6 to hear a case like this and make a determination, whether it is a valid claim."

Following the hearing, the hearing officer, in a decision entered October 2, 1987, held there was an insufficient evidentiary basis for Kaufman Grain increasing the damage discount on the corn in issue to $12,246.60. Therefore, the hearing officer ordered Kaufman Grain to reduce its damage discount to $2,160.73, which was the amount of the original damage discount for the landlord's share of the 1985 corn crop grown on the Kostbade Farms.

In appealing from the circuit court decision which affirmed the hearing officer's decision, Kaufman Grain asserts (1) the Department had no jurisdiction to adjudicate the dispute between it and CAPS because (a) the complaint which CAPS filed with the Department was not verified, (b) the adjudication of such disputes by the Department is a usurpation of the judicial power and violates the doctrine of separation of powers, and (c) the notice of hearing which Kaufman Grain received does not properly identify the Department's authority for adjudicating disputes such as this; (2) in adjudicating the dispute between it and CAPS, the Department relied on purported rules which are void because they have never been properly promulgated; (3) the hearing officer's decision is void because the hearing officer did not make adequate findings of fact and conclusions of law; and (4) the hearing officer's decision is contrary to the manifest weight of the evidence.

We find Kaufman Grain's argument the Department improperly relied on rules which have not been properly promulgated in adjudicating the dispute between it and CAPS dispositive of this appeal. Kaufman Grain contends the following statement of the hearing officer indicates the Department has rules of general applicability which allow it to in effect enter orders awarding damages against grain

dealers and grain warehouses on the basis of grain producer complaints:

> "In past cases, I'll either decide that the dealer licensee is ordered to pay certain damages to the producer or reduce the amount of the claim to a certain point and order him to pay that or deny the claim in its entirety and dismiss the matter."

Kaufman Grain contends this purported rule is invalid because it was not subjected to the applicable notice and comment requirements and is not on file with the Secretary of State as required by the relevant provisions of the Illinois Administrative Procedure Act (APA) (Ill. Rev. Stat. 1985, ch. 127, pars. 1004(c), 1005.01). Kaufman Grain further states it "did not have any knowledge of the Department's rule and, in fact, objected to the Department's authority to hear the case and award damages." Kaufman Grain requests an award of reasonable attorney fees pursuant to section 14.1(b) of the APA (Ill. Rev. Stat. 1985, ch. 127, par. 1014.1(b)) on the basis the Department has exceeded its jurisdiction by establishing a rule of general applicability which was not properly promulgated and hearing a case which it had no jurisdiction to adjudicate.

The Department asserts Kaufman Grain waived its argument the Department relied on an improperly promulgated rule by not presenting that argument during the proceedings before the Department. The Department also asserts it properly relied on section 18a of the Public Grain Warehouse and Warehouse Receipts Act (Ill. Rev. Stat. 1985, ch. 114, par. 214.28) as authority for adjudicating the CAPS-Kaufman Grain dispute. It maintains authority to adjudicate such disputes can be found by direct reference to section 18a. The Department argues, therefore, no administrative rules are necessary in order for it to be able to take the action it did in this case.

■ Generally, failure to assert a particular argument during proceedings before an administrative agency results in waiver of the point, and the argument may not be considered on appeal. (*Leffler v. Browning* (1958), 14 Ill. 2d 225, 151 N.E.2d 342.) This principle is not, however, applicable to the question of the authority of administrative tribunals to adjudicate causes. This question may be considered for the first time on appeal, despite the failure of any of the parties to raise it in proceedings before an administrative agency. See *Bushnell v. Industrial Board* (1916), 276 Ill. 262, 114 N.E. 496.

■ In the present case, Kaufman Grain's counsel stated at the May 29, 1987, hearing:

> "I'm not going to add much additional to my motion [to dismiss] other than to say that I don't believe that the Depart-

ment has subject matter jurisdiction of the complaint which we have before us at this time. The notice [of the filing of CAPS's complaint and of the hearing] which is in the Department's Exhibits 1 through 3 does not cite any rule or statute that I'm aware of that gives the Department jurisdiction to proceed with this complaint and I ask that it be dismissed * * *."

Prior to the presentation of evidence at the August 11, 1987, hearing, counsel for Kaufman Grain stated:

"[U]nder the Administrative Procedure Act we're all familiar with, notice has to be given as to what particular statutory provision or rule is involved, and the only thing the Department has alleged is a Section 6 violation and that has nothing to do with grading grain or anything of that nature. I don't know of any rules the Department has about grading and assessing grain, certainly none have been pointed out previously in this hearing."

Thus, although Kaufman Grain's counsel did not explicitly state Kaufman Grain objected to the proceeding on the basis of the Department's failure to properly promulgate rules and file them with the Secretary of State, Kaufman Grain's counsel implied he had been unable to locate any Department rules concerning adjudication of cases of this type by the Department. For this reason, and because it was not essential the question whether the Department properly promulgated rules permitting it to adjudicate disputes of this kind be specifically raised in the proceedings before the hearing officer, we hold this question may be considered on review. We note parenthetically there is little likelihood the Department was prejudiced as a result of Kaufman Grain's failure to specifically raise this issue in the proceedings before the hearing officer.

■■ Section 3.09 of the APA defines "rule" as:

"[E]ach agency statement of general applicability that implements, applies, interprets, or prescribes law or policy, but does not include (a) statements concerning only the internal management of an agency and not affecting private rights or procedures available to persons or entities outside the agency, (b) informal advisory rulings issued pursuant to Section 9, (c) intra-agency memoranda or (d) the prescription of standardized forms." (Ill. Rev. Stat. 1985, ch. 127, par. 1003.09.)

Section 5.01 of the APA (Ill. Rev. Stat. 1985, ch. 127, par. 1005.01) prescribes public notice and comments requirements which administrative agencies must generally follow in enacting rules. Unless a rule is promulgated in conformity with these requirements and is filed

with the Secretary of State, it is not valid or effective against any person or party and may not be invoked by an administrative agency for any purpose. Ill. Rev. Stat. 1985, ch. 127, par. 1004(c).

■ An amendment of an agency procedure, such as adoption of a new financial formula for the payment of nursing homes for medical services, constitutes the adoption of a rule and is subject to the above requirements. (*Senn Park Nursing Center v. Miller* (1984), 104 Ill. 2d 169, 470 N.E.2d 1029; see also *Hernandez v. Fahner* (1985), 135 Ill. App. 3d 372, 481 N.E.2d 1004.) However, not all statements of agency policy must be announced by means of published rules. When an administrative agency interprets statutory language as it applies to a particular set of facts, adjudicated cases are a proper alternative method of announcing agency policies. *NLRB v. Wyman-Gordon Co.* (1969), 394 U.S. 759, 22 L. Ed. 2d 709, 89 S. Ct. 1426; *Board of Trustees, Prairie State College v. Illinois Educational Labor Relations Board* (1988), 173 Ill. App. 3d 395, 412, 527 N.E.2d 538, 549-50.

In the present case, the Department has apparently adopted a policy under which it adjudicates disputes between grain producers and grain dealers and warehouses concerning the quality of grain. It cannot be seriously disputed such a policy constitutes a "rule" within the meaning of section 3.09 of the APA (Ill. Rev. Stat. 1985, ch. 127, par. 1003.09), and the Department does not contend such a policy is not a rule for purposes of the APA. Moreover, the Department does not contend it complied with any of the APA-mandated procedures in adopting this rule.

■ None of the statutes mentioned in the previously quoted statements of Mr. Narmont and the hearing officer during the administrative proceedings clearly inform the public the Department adjudicates disputes such as this. The same is true of section 18a of the Public Grain Warehouse and Warehouse Receipts Act (Ill. Rev. Stat. 1985, ch. 114, par. 214.28), on which the Department relies on appeal. Furthermore, the public is provided with no information concerning the procedural rules which apply to proceedings before the Department involving such disputes. The Department adjudicating a broad category of disputes without having properly adopted a single administrative rule relevant to such proceedings is obviously a quite different type of situation from an administrative agency interpreting statutory language as it applies to specific facts. The Department's failure to comply with the relevant provisions of the APA in promulgating the rules here at issue renders the rules invalid. (*Senn Park*, 104 Ill. 2d 169, 470 N.E.2d 1029.) Consequently, the Department was without authority to adjudicate the CAPS-Kaufman Grain dispute and to enter

the order which it did in this case. Ill. Rev. Stat. 1985, ch. 127, par. 1004(c); *cf. Townships of Almira, Blaine, Colfax, Crystal Lake, Gilmore, Homestead, Inland, Joyfield & Weldon v. Benzie County Tax Allocation Board* (1978), 80 Mich. App. 755, 265 N.W.2d 39.

The cases which the Department cites in support of its position as to this issue (*Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 369 N.E.2d 875; *Alexander v. Director, Department of Agriculture* (1983), 111 Ill. App. 3d 927, 444 N.E.2d 811) do not require a result different from that which we here reach. Neither of these cases addresses the failure of an administrative agency to promulgate rules in accordance with the requirements of the APA. Therefore, they are of no direct relevance to the dispositive issue in this case.

■ We further conclude Kaufman Grain is, under the facts of this case, entitled to an award of the attorney fees which it reasonably incurred in this litigation. Section 14.1(b) of the APA provides:

"In any case in which a party has any administrative rule invalidated by a court for any reason, including but not limited to the agency's exceeding its statutory authority or the agency's failure to follow statutory procedures in the adoption of the rule, the court shall award the party bringing the action the reasonable expenses of the litigation, including reasonable attorney's fees." (Ill. Rev. Stat. 1985, ch. 127, par. 1014.1(b).)

The import of our decision in this case is Kaufman Grain had the Department's *de facto* rules providing for adjudication by the Department of disputes between grain producers and grain dealers and warehouses invalidated.

■ Section 14.1(b) of the APA does not clearly state whether an attorney fee award in a case such as this is to be limited to the fees incurred in the administrative review proceeding or whether fees incurred in proceedings before the administrative agency should also be awarded. However, one of the purposes of this provision is to give those subject to regulation an incentive to oppose doubtful rules where compliance would otherwise be less costly than litigation. (*Board of Education v. Illinois State Board of Education* (1984), 122 Ill. App. 3d 471, 461 N.E.2d 567.) If attorney fee awards were available only with respect to administrative review proceedings, the above-mentioned purpose would often be frustrated, for proceedings before an administrative agency are quite often more costly and time consuming than administrative review proceedings. Also, subsection 14.1(a) of the APA provides for awards of costs, including reasonable attorney fees, on the basis of untrue allegations made without reasonable cause by administrative agencies in administrative proceedings

which are not the subject of judicial review. (Ill. Rev. Stat. 1985, ch. 127, par. 1014.1(a).) This provision is indicative of a general legislative intent to permit awards of attorney fees incurred in administrative proceedings which are based on invalid administrative rules, when such causes proceed to court for judicial review. For these reasons, we hold that on remandment to the circuit court, the court shall award Kaufman Grain the amount of attorney fees which it reasonably incurred in this litigation, including the fees incurred in the proceedings before the Department.

To summarize, we hold (1) the issue of whether the Department of Agriculture improperly promulgated rules providing for adjudication by the Department of disputes of this type may be considered on review; (2) the Department's initiating the practice of adjudicating disputes of this type amounted to the promulgation of administrative rules within the meaning of the APA; (3) the Department did not comply with the APA in promulgating these rules; (4) no statutory language provides a basis for adjudication by the Department of disputes of this type absent administrative rules which specifically provide for adjudication of such disputes; (5) the Department's hearing officer was without authority to enter the order which he did in this cause; and (6) Kaufman Grain caused an administrative rule or rules to be invalidated in this proceeding and is thus entitled to an award of the attorney fees which it reasonably incurred in this litigation.

The decision of the circuit court is reversed, and this cause is remanded to the circuit court with directions to reverse the order of the Department of Agriculture and enter an order awarding Kaufman Grain Company, Inc., the amount of the attorney fees which it reasonably incurred in this litigation. Further, Capital Agriculture Property Services, Inc., is ordered to return the warehouse receipt or the value thereof to Kaufman Grain.

Reversed and remanded with directions.

LUND and SPITZ, JJ., concur.